OPINION OF THE COURT
Ira Gammerman, J.
Does New York Property/Casualty Insurance Security Fund (Security Fund) provide coverage to an insured who manufactures a product in New York when that product allegedly causes personal injury in another State? The New York Superintendent of Insurance (Superintendent) has ruled that there is no coverage and the court agrees.
This is a combined CPLR article 78 proceeding and declaratory judgment action challenging the Superintendent’s denial of Snyder Tank Corp.’s (Snyder) claim for coverage under the New York Security Fund.
Snyder is a manufacturer of fuel tanks for medium and heavy duty trucks. Its fuel tanks are sold to truck manufacturers such as Navistar, General Motors and Mack Trucks and are installed in trucks which operate throughout the 50 States and the provinces of Canada.
Union Indemnity issued a policy of insurance to Snyder bearing insurance policy number UGL19900, effective from September 1, 1984 to September 1, 1985. "The policy provided completed operation and products liability insurance covering bodily injury liability and property damage liability with a limit of $1,000,000 per occurrence and in the aggregate, with a deductible of $10,000 per occurrence.”
The genesis of this action is an earlier action instituted in California in February of 1985 to recover damages for bodily injuries allegedly sustained by George and Soo Whang in a motor vehicle accident which occurred on December 18, 1984, in California. The Navistar truck involved in the accident was equipped with a Snyder fuel tank, that was allegedly defec *704 tive. The gas tank’s allegedly defective components were manufactured by Snyder in its Buffalo, New York, facility, assembled at Snyder’s Springfield, Ohio, plant and delivered to Navistar in Ohio.
Initially Union Indemnity accepted and undertook the defense and indemnification of the Whang lawsuit. Union then went into liquidation and Snyder requested that the Superintendent defend and indemnify through the New York Security Fund. The Superintendent denied Security Fund coverage to Snyder based on an interpretation of the applicable statutory provisions, which required that: (1) the product leave the possession and control of the insured in the State of New York, and (2) the occurrence, incident, or accident invoking coverage occur in the State of New York. Neither prerequisite is met on the facts presented herein.
Thereafter, Snyder submitted a timely proof of claim in the liquidation proceeding and applied to the Ohio Insurance Guaranty Association (OIGA) to defend the Whang action and indemnify up to its $300,000 limit. OIGA has agreed to do so, reserving any rights it may have against the Superintendent and the Security Fund.
Snyder and OIGA have instituted this article 78 proceeding and declaratory judgment action, each asserting that the Superintendent’s criteria and their application to Snyder is irrational, arbitrary, capricious and unreasonable, contrary to law, contrary to the legislation’s intent and contrary to constitutional requirements. A judgment is sought directing the Superintendent to provide Security Fund coverage for the claims.
background:
The New York Security Fund was initially adopted in 1969 as a special benefit to protect New York insureds from the insolvency of companies underwriting automobile liability insurance. Coverage was limited to accidents occurring in New York State and had a $1,000,000 statutory limit. This provision was later changed to provide New York State insureds with coverage for automobile accidents without regard for the location of the accident.
The Security Fund’s protection was then extended to other forms of casualty property insurance. That statutory extension, however, contained the same restrictive language found in the earlier automobile Security Fund statute. Covered occurrences had to take place in New York State.
*705 Other States followed New York’s lead and adopted security fund coverage systems. Most followed the Model Act framework, providing coverage if either the insured was a resident of the State or the accident occurred in the State. Security fund coverage in other States varies between $50,000 and $500,000. Almost 20 years have elapsed, and while there have been some amendments to the Security Fund statute, the New York Legislature has not seen fit to conform the New York Security Fund to the national pattern. It remains more restrictive as to the claims covered, but is the most generous as to the amount of such coverage.
STATUTORY INTERPRETATION ARGUMENTS:
Snyder and OIGA claim that the plain language of the statutes, the rules of statutory construction as applied to section 7602 (g) and section 7603 (a) (1) (B) of the Insurance Law and the legislative intent do not support the Superintendent’s interpretation of the term risk. Based on Matter of Guardian Life Ins. Co. v Chapman (302 NY 226 [1951] [a tax case]) Snyder argues that the term "risk” refers to the insured, Snyder, which is and has been a resident in New York, and that any other reading defeats the legislative intent to protect New York insureds.
The Superintendent maintains that all of the arguments advanced by Snyder and OIGA were raised in Matter of Interstate Ins. Co. (Murphy Pac. Mar. Salvage Corp. [Merritt Div.]—Superintendent of Ins.) (47 NY2d 909 [1979]) and that the Court of Appeals has already affirmed the Superintendent’s interpretation of the statute as applied to marine liability insurance. In Interstate the court upheld the Superintendent’s interpretation that the term "risks” in section 7602 (g) referred to liability for injury sustained aboard the vessel, and that under section 7603 (a) (1) (B) the accident had to occur within the State for coverage to be afforded. The Superintendent argues that the same approach should be applied to products liability insurance. I agree that the Superintendent’s interpretation is rational and consistent with the rules of construction and the legislative intent, and that Matter of Interstate Ins. Co. (Murphy Pac. Mar. Salvage Corp. [Merritt Div.]—Superintendent of Ins.) (supra) is controlling.
Insurance Law § 7602 (g) defines an allowed claim as "a claim based upon a policy insuring property or risks located or resident in this state”. Payment of an allowed claim is permitted under Insurance Law § 7603 (a) (1) (B) "for all of the kinds *706 of insurance specified in paragraphs four through fourteen, sixteen, seventeen, nineteen through twenty-two and twenty-four of subsection (a) of section one thousand one hundred thirteen of this chapter with respect to coverage of property or risks located or resident in this state”. Products liability and completed operations coverage are types of coverage contemplated in the appropriate paragraphs of subdivision (a) of section 1113. (See, Insurance Law § 1113 [a] [13], [24].)
The Superintendent exercising his broad powers to interpret and implement the Insurance Law has read these statutes to contain two separate requirements for eligibility for coverage by the Security Fund in the case of products liability insurance. First the Superintendent defines "risk” as being created the moment the defective product leaves the hands of the manufacturer and enters the stream of commerce. This event creates the insurable risk, which under Insurance Law § 7602 (g) must occur in New York.
Second, the Superintendent interprets Insurance Law § 7603 (a) (1) (B) to create another requirement for coverage that the location of the occurrence giving rise to coverage, such as an accident or the use of the product, must also be in New York.
Here, the Snyder tank in question left New York for further assembly by Snyder at its Ohio plant, where it was sold and delivered to Navistar. The defective tank left the hands of Snyder in Ohio and, thus, does not meet the first requirement. The accident occurred in California. The second criteria has, therefore, not been met as well.
The Superintendent’s interpretation of the term risk varies from section 7602 (g) and section 7603 (a) (1) (B) and does not offer the consistency of Snyder and OIGA’s reading of the term "risk” to mean the insureds. The inconsistency of the Superintendent’s position however is not irrational or unreasonable if section 7603 (a) (1) (B) is to serve any purpose. (Matter of Horizon Ins. v Pulmosan Safety Equip. Corp., index No. 42103/84, Jan. 30, 1988, Sup Ct, NY County, Glen, J.) As the Superintendent notes section 7602 (g) defines allowed claim and then section 7603 (a) (1) (B) further indicates which allowed claims would be covered by the Security Fund. If it was the Legislature’s intention to cover products liability claims of New York resident insureds no matter where injury or loss occurred, then it could have followed the scheme of the Automobile Security Fund, which clearly provides for out-of-State coverage, or adopted the Model Act Formulation chosen by many other States. It did not do so.
*707 The Court of Appeals, in Matter of Interstate Ins. Co. (Murphy Pac. Mar. Salvage Corp. [Merritt Div.]—Superintendent of Ins.) (supra), accepted the Superintendent’s interpretation of these provisions in a marine liability claim. For there to be coverage, the vessel had to be berthed in New York. This requirement is mirrored in the case of products liability by the requirement that the product leave the hands of the manufacturer and enter the stream of commerce in New York. In both instances the Superintendent also required that the accident occur in New York. The parallel between the marine liability and products liability seems relatively clear and the interpretation of the Superintendent is consistent with that found by the court in Interstate. In both cases the vessel or the product can and did travel out of State, but it is apparent that the Legislature required a greater nexus with New York then the mere presence of the insured. Moreover, the Legislature has had almost 10 years since Interstate was decided within which to correct any inequity engendered by that decision. It has not done so, despite other amendments to the very same provisions of the Insurance Law. It must be assumed, then, that the Legislature accedes to the interpretation of the Superintendent and confirmed by the Court of Appeals, that it was their intention to cover New York insureds’ products liability claims and other casualty losses only when a more substantial connection with New York can be established. This position given New York’s most generous levels of coverage is both reasonable and rational, if the Security Fund is to be properly administered and adequately funded.
The determination of the Superintendent is to be upheld unless it is irrational or unreasonable. (Matter of Consolidated Mut. Ins. Co. [Arcade Cleaning Contrs.—Superintendent of Ins.], 60 NY2d 1 [1983].) None of the arguments based on statutory interpretation or legislative intent provide any basis for finding that the Superintendent’s statutory interpretation is irrational or unreasonable. To the contrary, the interpretation is consistent with the rules of statutory construction and the purposes sought to be achieved by the Legislature.
CONSTITUTIONAL ARGUMENTS:
Petitioners advance three constitutional arguments based on: (1) equal protection; (2) due process, and (3) the Commerce Clause. They are all without merit. All are premised in part on the mistaken view that the Superintendent’s interpretation *708 bears no rational relationship to the statute’s purpose and that there is an entitlement on the part of resident insureds to Security Fund coverage that is defeated by the Superintendent’s policy.
A challenge to legislative enactment or interpretation based on equal protection, which does not involve a "suspect classification” such as race, religion or national origin or implicate fundamental rights such as free speech or the right to travel, is subject only to minimum scrutiny. It will be upheld if "the classification challenged [is] rationally related to a legitimate state interest” (New Orleans v Dukes, 427 US 297, 303 [1976]; Weissman v Evans, 56 NY2d 458 [1982]).
Moreover, individuals challenging a law bear a heavy burden, for it is presumed in the first instance that the statute is constitutional and that the Legislature investigated and found facts sufficient to support the need for the disputed measure. (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11-12 [1976].) Statutory distinctions not dealing with suspect classifications or fundamental rights "will not be set aside if any state of facts reasonably may be conceived to justify it.” (McGowan v Maryland, 366 US 420, 426 [1961].) In the area of economics and social measures State legislation has traditionally been subject to limited scrutiny under the "rational relationship” test. (San Antonio School Dist. v Rodriguez, 411 US 1 [1973].)
Under the McCarran-Ferguson Act (15 USC § 1011 et seq.), regulation of the business of insurance has been reserved to the States, as a proper exercise of the police powers. (Country-Wide Ins. Co. v Harnett, 426 F Supp 1030 [SD NY 1977], affd 431 US 934 [1977].) Here no suspect class or fundamental right is involved. The limited scrutiny of the rational relationship test results in a finding that equal protection is not violated by the Superintendent’s reading of the statute restricting Security Fund coverage to products which enter the stream of commerce in New York and cause an accident occurring in the State. As noted in Matter of Horizon Ins. (supra, at 7) "the state has a legitimate interest in reducing the liability of the Security Fund to manageable and realistic proportions, and to protect the Fund from claims which might potentially deprive New York citizens of the benefits of their Fund.” The requirements that tie products liability claims more closely to New York are the type of classification that the courts have sustained as not violative of the right of equal protection (see, e.g., Weinberger v Salfi, 422 US 749 [1975]; Ballesteros v New Jersey Prop. Liab. Ins. Guar. Assn., 530 F *709 Supp 1367 [D NJ 1982], affd 696 F2d 980 [3d Cir 1982]; Montgomery v Daniels, 38 NY2d 41 [1975]).
A due process challenge is equally untenable. To make such a claim, the challenger must demonstrate a valid property interest. (Grossman v Axelrod, 646 F2d 768 [2d Cir 1981].) An insured, however, has no cognizable property interest in the Security Fund, which constitutes an extraordinary benefit (cf., Methodist Hosp. v State Ins. Fund, 102 AD2d 367 [1984], affd 64 NY2d 365 [1985], appeal dismissed 474 US 801 [1985]; Matter of Lap v Axelrod, 95 AD2d 457 [1983], lv denied 61 NY2d 603 [1984]). Furthermore, the State in conferring such benefit has the right to limit the terms and conditions upon which it will be available (cf., Roundtree v Berger, 420 F Supp 282 [ED NY 1976], affd 430 US 912 [1977]). Even if a property interest could be found, the legislation and its interpretation would meet the applicable test for substantive due process. Like equal protection analysis, due process mandates that the challenged law is reasonably related to a legitimate State interest (Williamson v Lee Opt. Co., 348 US 483 [1955]; Health Ins. Assn. v Harnett, 44 NY2d 302 [1978]).
The Superintendent’s interpretation of the Insurance Law provisions pertaining to coverage by the Security Fund of products liability claims, as noted above, does serve legitimate State interests and is reasonably calculated to meet the needs of an orderly and efficient administration of the Fund as well as provide a measure of protection for New York insureds, who have claims with sufficient nexus to the State.
A Commerce Clause challenge is likewise unavailing. Article I, § 8, clause 3 of the US Constitution vests Congress with authority "[t]o regulate Commerce with foreign Nations, and among the several States”. Implicitly, the States are forbidden to enact legislation that regulates interstate commerce. (Pennsylvania v West Virginia, 262 US 553 [1923].)
In the McCarran-Ferguson Act (15 USC §§ 1011-1015) Congress provided that regulation of the insurance industry would be reserved for the States. Where Congress determines that an aspect of interstate commerce may be freely regulated by the States, then "any action taken by a State within the scope of the congressional authorization is rendered invulnerable to Commerce Clause challenge” (Western & S. Life Ins. Co. v Board of Equalization, 451 US 648, 653 [1981]; Metropolitan Life Ins. Co. v Ward, 470 US 869 [1985]).
The liquidation of an insolvent insurance company is a *710 matter of State interest. (Law Enforcement Ins. Co. v Corcoran, 807 F2d 38, 44 [2d Cir 1986]; Corcoran v Ardra Ins. Co., 657 F Supp 1223 [SD NY 1987]; Matter of Knickerbocker Agency [Holz], 4 NY2d 245 [1958]; Matter of Union Indem. Ins. Co., 137 Misc 2d 575 [Sup Ct, NY County 1987].) The Security Fund, established to create an extraordinary benefit affording protection against losses occasioned by the insolvency of liability insurers (see, 1969 McKinney’s Sessions Laws of NY, at 2393-2394, 2544), is an integral part of the New York legislative scheme respecting such insolvencies. As such, it is exempt from Commerce Clause challenge. Furthermore, the effects on interstate commerce are not excessive in relation to the local benefits. Here, several contingencies must occur before there is any issue of Security Fund coverage. A decision by a New York company as to whether to sell a product outside of New York can hardly be said to be affected by the existence of such coverage for a remote eventuality.
other arguments:
The argument by Snyder and the others that the interpretation of the statute by the Superintendent is contrary to a national system is inapposite. Such national system does not control a preexisting New York statute. Indeed, uniformity, although it may be an appropriate goal, is a decision that should be made by the Legislature, not by the courts. If the Legislature concludes that it is that important that we have uniformity, then it can enact legislation to conform New York’s statute to the national model.
Similarly the argument that the interpretation results in a specific or categorical exclusion for claims arising out of products liability, given that products frequently leave the State, is unpersuasive. Many products are manufactured and used within the State and allegedly can be the cause of accidents within the State.
The plaintiffs’ argument that the funding of the Security Fund is based on premiums, which cover risks located outside New York, and that it is unfair to restrict Security Fund payments only to claims arising in New York, has some appeal. The remedy for this apparent inequity, however, lies with the Legislature, not the courts.
The Superintendent’s interpretation is valid and consistent. It is in conformity with the statute and the rules of construction. The constitutional objections and other arguments are without merit.
*711 Accordingly, the petition is denied and the court grants judgment to the Superintendent declaring his interpretation of the pertinent statutes to be valid, correct and constitutional. There being no constitutional rights abrogated, an action under 42 USC § 1983 does not lie and is dismissed.