OPINION OF THE COURT
Beverly S. Cohen, J.
Policyholders New York Dock Railway (NYDR) and Brooklyn Eastern District Terminal (BEDT) move pursuant to CPLR 4405 to confirm the report of Referee Maurice G. Ganz, which found that there is coverage of the Buividas and Romacho claims by the Stock Workers’ Compensation Security Fund and that the Liquidation Bureau should be required to defend and indemnify the policyholders of Midland Insurance policies numbers WC 731960, WC 731965 and GL 724681. This application is joined in by the claimants Buividas and Romacho. The Superintendent of Insurance as liquidator of Midland Insurance Company cross-moves to disaffirm the Referee’s report and to uphold the Superintendent’s interpretation and application of the relevant statutes and sustain his original denial of Security Fund coverage.
Midland issued three policies of insurance to NYDR, which include coverage of its operations at BEDT for the period August 16, 1982 to August 16, 1983. Policy number WC 731960 is a standard workers’ compensation and employer’s liability policy with no special endorsements. Policy number WC 731965 is another workers’ compensation and employer’s liability policy containing an endorsement covering maritime operations. Policy number GL 723681 is a comprehensive general liability policy containing an endorsement expressly covering Federal Employers’ Liability Act (FELA) claims.
On October 15, 1982 claimant Richard Romacho, while employed by NYDR was injured when he slipped and fell outside a terminal maintained by NYDR. Romacho brought suit against NYDR under FELA (45 USC § 51 et seq.), in Kings County Supreme Court in August 1984.
On August 8, 1983 John Buividas while employed by NYDR and/or BEDT sustained injuries when he slipped and fell in the engine room of a tugboat owned and operated by NYDR and/or BEDT. John Buividas brought suit in Supreme Court, Queens County, in February 1985 against NYDR and BEDT to *80 recover under FELA, the Jones Act (46 USC § 688 et seq.), the Federal Longshoremen’s and Harbor Workers’ Compensation Act (33 USC § 933 et seq.), as well as a maritime claim for unseaworthy vessel. His wife joins in the suit seeking to recover for loss of consortium.
The liquidator as administrator of the various security funds has declined coverage as to both the Property/Casualty Security Fund as well as the Stock Workers’ Compensation Security Fund for Buividas’ and Romacho’s claim. A hearing on the disclaimers was held before Referee Ganz, at which legal issues involved in the coverage dispute were presented, the parties having agreed on the facts. It is his report on these issues that is presently before the court for review.
Upon review of the record and the report it appears that the conclusions of the Referee are erroneous and stem from a misinterpretation of the legislative history and intent, as well as a selective reading of the statute which did not give due weight to the Superintendent’s interpretation of the applicable provisions.
Firstly it is evident that the Referee premised his decision on the view that it was the intention of the Legislature in establishing the security funds to provide some sort of foolproof safety net whereby coverage would be found under one fund or another. Such approach was specifically rejected by the Court of Appeals in Matter of Consolidated Mut. Ins. Co. (Arcade Cleaning Contrs. — Superintendent of Ins.) (60 NY2d 1) (Arcade). Security fund coverage is an extraordinary benefit which, in conferring it, the State has a right to limit (Matter of Snyder Tank Corp. v Superintendent of Ins., 140 Misc 2d 702, 709, affd 150 AD2d 992). In New York, the Legislature has exercised the right to limit security fund coverage in various ways, including requiring that both the risk and the occurrence, rather than just the insured, be located in New York (Matter of Interstate Ins. Co. [Murphy Pac. Mar. Salvage Corp.], 47 NY2d 909; Matter of Snyder Tank Corp. v Superintendent of Ins., supra; Matter of Horizon Ins. Co. [Pulmosan Safety Equip. Corp.], Sup Ct, NY County, Jan. 30, 1988, Glen, J., index No. 41203/84).
Some areas not originally covered were added by the Legislature in 1984, in particular, third-party claims for indemnification or contribution brought against an employer for injuries sustained by employee while working. Chapter 801 (see, L 1984, ch 801) forms the statutory center of the instant dispute. *81 The legislation was sponsored and drafted by the Superintendent of Insurance to fill a gap in coverage that became an issue in Arcade (supra; see, mem of State Dept of Ins, 1984 McKinney’s Sessions Laws of NY, at 3431-3433).
Chapter 801 provided for amendment of Insurance Law former § 46 (13), now Insurance Law § 1113 (a) (13), to permit the writing of insurance to protect an insured against liability for indemnification or contribution to a third party held responsible for injury to the insured employee arising out of and in the course of employment when such insurance is written pursuant to this subdivision and not written pursuant to subdivision (15) of this section. The scope of insurance that could permissibly be written under former section 46 (13) was expanded and new kinds of insurance added, which became subject to the Property/Casualty Insurance Security Fund under Insurance Law §7602 (c). Chapter 801 also amended Workers’ Compensation Law § 107 to make the Stock Workers’ Compensation Security Fund applicable to the payment of liability claims against an employer under the employer’s liability insurance portion of the standard New York workers’ compensation and employer’s liability insurance policy, but no payment from the fund for such liability claim was to exceed the limit of the policy limit or $1 million on any one claim. The employer’s liability portion of such policies provided coverage for contribution and indemnification claims of third parties (see, e.g., the workers’ compensation policies issued herein).
Thus, both the Insurance Law and Workers’ Compensation Law were amended so that their respective security funds would encompass contribution and indemnification claims not previously covered.
Here, the Referee found that chapter 801 expanded section 107 of the Workers’ Compensation Law to encompass all claims under the employer’s liability portion of the policy, the Superintendent, as author of the bill, disagreed. The Superintendent pointed to section 6 of chapter 801 to support his position that amendments were limited to third-party claims of indemnification or contribution. Chapter 801, § 6 provides as follows: "This act shall take effect July first, nineteen hundred eighty-four and shall apply to all claims against an insured for indemnification or contribution to a third party held responsible for injury to the insured’s employee arising out of and in the course of employment and which has not been settled or reduced to judgment by such date, and the *82 chairman of the workers’ compensation board and the superintendent of insurance may take all actions necessary prior to such date to prepare for the implementation of this act.”
Taking the enactment as a whole and reading all the section in pari materia, the approach of the Superintendent is reasonable and rational. The effective date provision with its language as to applicability of the statute must be read to limit the changes in the Workers’ Compensation Law, to do otherwise would be to provide a statute that was only in effect as to half its provisions. Such schizophrenic reading could not have been the intention of the Legislature. For all provisions of an enactment are to have some purpose and are not to be deemed mere surplusage (see, Matter of Horizon Ins. Co. [Pulmosan Safety Equip. Corp.], supra; Matter of Snyder Tank Corp. v Superintendent of Ins., supra).
The Superintendent is charged with oversight of the security funds (Insurance Law § 7613; Workers’ Compensation Law § 107) and is empowered to "adopt, amend and enforce all reasonable rules and regulations necessary” for their proper administration (Insurance Law § 7613; Workers’ Compensation Law § 109-a). This includes interpreting the provisions of the law (see, Insurance Law § 301 [c]). The interpretation of the Superintendent is to be upheld unless it is irrational or unreasonable (see, Matter of Consolidated Mut. Ins. Co. [Arcade Cleaning Contrs. — Superintendent of Ins.], supra).
The Superintendent’s interpretations regarding the lack of security coverage herein are consistent with the legislative intent of the statute and result in a coherent and logical reading of chapter 801. Thus, the denial of coverage was rational and reasonable. The Referee’s recommendation finding to the contrary is without merit and has nothing to support it.
Accordingly, the motion to confirm the report is denied and the cross motion to disaffirm is granted. The court finds that the denial of coverage under the security funds is entirely legal and appropriate.