OPINION OF THE COURT
Ira Gammerman, J.
In this CPLR article 78 proceeding, petitioner the Royal Bank and Trust Company (Royal) seeks a judgment annulling the determination of the respondent Superintendent of Insur *865 anee denying New York Property/Casualty Insurance Security Fund (the Security Fund) coverage for certain claims made upon investor bonds and surety bonds issued by the now defunct Union Indemnity Insurance Company of New York (Union). These claims arose out of a private placement of shares in Harlan, Ltd., a Kentucky limited partnership, engaged in coal mining in Kentucky and the loan to the limited partnership by Royal to finance its operation. In addition, petitioner seeks a judgment directing that the Superintendent pay petitioner’s claims including costs, disbursements and legal fees.
In August 1983 a private placement memorandum was issued offering for sale 80 limited partnership units in Harlan, Ltd. at $50,000 per unit. The units were to be paid through an initial payment of $7,500 per unit and a promissory note for $42,500, secured by a bond or other security. Thereafter in October 1983, Harlan, Ltd. executed a loan agreement with Royal whereby it borrowed $3,400,000. The loan funds were advanced by Royal in New York and deposited to Harlan’s account at Royal in New York.
On the same date the purchasers of the limited partnership units executed separate promissory notes each for an amount specified herein payable to Harlan, Ltd. at an address in Cincinnati, Ohio, where its principal office was located or such other place as the general partner of Harlan, Ltd. should designate in writing. Each of the notes was assigned and delivered by Harlan, Ltd. to Royal in New York City as collateral for the loan. Of the investors 70% were New York residents, and had executed notes totaling $1,997,500. Another 15% of the investors, not residents of New York, executed their notes in New York before New York notaries covering an additional $70,000 for a total amount of $2,167,500.
On October 19, 1983, Union as surety issued separate investor bonds to Royal to secure payment of the investor notes, naming as principal on each bond, the single investor and Royal as obligee.
Harlan, Ltd. failed to make full payment to Royal on the loan though it was duly demanded. Most if not all the investors also defaulted on their notes.
In September 1984, prior to the liquidation order, Union entered into an agreement with Royal to pay on the bonds in installments. Partial payment was made, prior to the liquidation of Union. Royal then filed 55 separate proofs of claim *866 with respect to the individual investor bonds ranging in amount from $26,183.83 to $307,973.96.
Royal has also demanded indemnification from the Security Fund for all amounts which may be due under the investor bonds. The Superintendent of Insurance as administrator of the Security Fund has denied indemnification finding that these bonds do not meet the criteria set forth in Insurance Law § 7602 (g) and § 7603 (a) (1) (B) in that the claims are not based upon policies “insuring property or risks located or resident in this state” nor are the claims "with respect to coverage of property or risks located or resident in this state”.
Royal contends that the Superintendent’s denial of coverage is erroneous, contrary to law, arbitrary and capricious and results in a denial of due process and equal protection under the State and Federal Constitutions. A violation of the Commerce Clause of the United States Constitution is also claimed. The Superintendent argues that as the official charged with administering the Security Fund his interpretation of the appropriate statutes carries great weight and is rational, constitutional and in complete accord with the Insurance Law.
The Security Fund is an extraordinary benefit created by statute. (See, L 1969, ch 189; Matter of Snyder Tank Corp. v Superintendent of Ins. of State of N. Y., 140 Misc 2d 702, affd 150 AD2d 992, appeal denied 75 NY2d 704.) The payments made from the Fund are restricted to those circumstances and claims specifically authorized by statute. (Matter of Consolidated Mut. Ins. Co. [Arcade Cleaning Contrs.J, 60 NY2d 1; Matter of Midland Ins. Co. [Buividas], 147 Misc 2d 78.) The interpretation of the statutes by the Superintendent will be upheld unless it is irrational or unreasonable. (Matter of Consolidated Mut. Ins. Co. [Arcade Cleaning Contrs.], supra; Matter of Horizon Ins. Co. [Pulmosan Safety Equip. Corp.], index No. 42103/84, Sup Ct, NY County, Glen, J. [1988].)
With respect to these claims the Superintendent has taken the position that for Fund coverage the investment must be located in New York and the place for payment of the notes must also be New York. The Superintendent maintains that the investment here is the limited partnership Harlan, Ltd., engaged in coal mining in Kentucky with offices in Cincinnati, Ohio, where the notes were payable. Royal argues that the bonds were not underwritten to insure the limited partnership, but the payment of investor notes and that the notes *867 having been assigned to the bank in New York are due and payable within this jurisdiction locating the risk in New York. The petitioner also argues that the Superintendent has previously ruled, with respect to coverage of investor bonds in the liquidation of American Druggists Insurance Co., that the claim arises in New York if the lending bank is located here. Thus, it is maintained that the apparently inconsistent treatment here is arbitrary and capricious and specifically designed to prevent access to the Fund.
To determine whether the Superintendent’s standards are reasonable it is necessary to look to the statutory framework of the Security Fund and evaluate the manner in which it applies to investor bonds. Under Insurance Law § 7602 (g) an allowed claim is one "based upon a policy insuring property or risks located or resident in this state”. Payment of such allowed claims is permissible "for all of the kinds of insurance specified in paragraphs four through fourteen, sixteen, seventeen, nineteen through twenty-one and twenty-four of subsection (a) of [section 1113] of this chapter with respect to coverage of property or risks located or resident in this state” (Insurance Law § 7603 [a] [1] [B]). Investor bonds are encompassed under section 1113 (a) (16) (D) which covers surety insurance. Recent amendments not applicable by the claims asserted here have removed financial guaranty insurance such as these investor bonds from the ambit of Security Fund coverage. The statutory framework thus requires that the risk insured and the risk covered both be located or resident in New York. (Matter of Interstate Ins. Co. [Murphy Pac. Mar. Salvage Corp.] 47 NY2d 909; Matter of Snyder Tank Corp. v Superintendent of Ins. of State of N. Y., supra.)
The first question posed is what is the risk covered. The Superintendent views the risk as the investment. Royal argues that it is the repayment by the investors. A review of the investor bonds indicates that Royal’s position is correct. They are not denominated investment bonds insuring the solvency of Harlan, Ltd., but rather are investor bonds to insure that the individual shareholders make payment to Royal, on the investor notes when demanded. The liability on the bonds exists independent of the profitability of the underlying investment. It is the failure of the investor to make payment on demand which triggers liability on the bond, not the default by Harlan, Ltd. on the loan. If Harlan, Ltd. defaulted on the loan, but the investor paid on the assigned notes, no liability on the bond would arise.
*868 Moreover, the Superintendent in sponsoring the recent amendment to the Insurance Law (art 69, L 1989, ch 48), which removed financial guaranty insurance from Fund coverage, tacitly recognized that prior to the amendment the Fund was open to tremendous exposure in the area of financial guaranty insurance, stemming from New York’s position as a major capital and financial center; and that measures limiting such exposure were necessary to protect the Fund’s integrity and viability. The Superintendent, in his letter dated April 12, 1989 supporting the remedial legislation, mentions the bonding of investors in such volatile out-of-State transactions as oil drilling, as spurring the need for Security Fund reform. (1989 McKinney’s Session Laws of NY, at 2055.) If coverage of such bonding were unavailable under the old law, there would be no need for amendment to exclude such coverage. The Superintendent is seeking to make the change retroactive when the statute clearly reflects an intent for prospective change only, given its later effective date.
Next, the Superintendent claims that if the insured risk is viewed as the payment of the investor notes, rather than the financial security of the underlying investment, then the insured risk and the covered risk will be one and the same. However, the statute does not preclude such possibility. The analysis of the insurance product will determine the nature of the coverage. The insured risk may, in some instances, be one and the same as the triggering event or the covered risk.
With respect to what is the insured risk, the Superintendent has taken conflicting positions dependent upon whether a claim is presented or whether he wants to obtain statutory approval for more limited exposure. Such policy positions are not subject to the expediency or convenience of the moment. The administrative agency charged with interpretation of statutes must adopt positions in a coherent and consistent manner with appropriate regard for positions previously taken, or must clearly explain the reasons for deviation from prior policy (Matter of Field Delivery Serv. [Roberts], 66 NY2d 516). No explanation is proffered for the change adopted here other than the desire to operate under the more restrictive terms of the statute before its effective date. Such reason is nothing more or less than an admission that the change is inconsistent with the then existing law, and, therefore not proper.
Likewise, the conduct of Superintendent has also been inconsistent regarding the standard for covered risk. Here he *869 asserts that the locus of the covered risk is the place where payment on the notes is to be made and alleges that it is in Cincinnati, Ohio, where the notes were originally payable. Such view ignores the assignment of the notes to Royal, its receipt of the collateral and position as a holder, the notice to the investors from the general partner of the assignment and the provisions of UCC 3-603 that require for discharge subsequent to the assignment, payment is to be made to the holder. (See, First Natl. Bank v Rob-Glen Enters., 101 AD2d 848, appeal denied 63 NY2d 605.) The position of the Superintendent is diametrically opposed to that taken regarding the liquidation of American Druggists Insurance Co., wherein the Superintendent stated that the "lending bank or institution must be located in New York.” As with the first requirement the Superintendent cannot state one rule in one case, and another in this one. He must be internally consistent in his interpretation and application of the statutory criteria. (Matter of Field Delivery Serv. [Roberts], supra.) The failure to do so is arbitrary and capricious and his implementation of the criteria is not in accord with the statute.
Accordingly, the petition is granted to the extent that the determination denying coverage to all the investor bonds is annulled and the matter is remanded to the Superintendent for further inquiry as to whether the individual investors reside in New York and would pay the notes from here. If such is the case, then the Superintendent shall afford coverage of the Security Fund with respect to that particular investor bond.
The remaining claims for costs and damages are severed and set down for hearing before Referee Hyman Korn who has previously handled factual issues in this liquidation.