Peter O'BRIEN and Nancy O'Brien, Plaintiffs,

v.

The CITY OF NEW YORK, Defendant.

No. CV–93–0332.

United States District Court, E.D. New York.

May 24, 1993.

---

944

Augustin J. San Filippo, Paul S. Edelman, Kreindler & Kreindler, New York City, for plaintiffs.

Steven Levi, Asst. Corp. Counsel, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff Peter O'Brien was injured while working as a Ferry Terminal Supervisor at the St. George Terminal of the Staten Island Ferry in Staten Island, New York. He commenced this personal injury action under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* Defendant City of New York (the "City") moves to dismiss the complaint under Fed.

R.Civ.P. 12(b)(6) for failure to state a claim for relief. Because the parties have submitted matters outside the pleadings, the City's motion is converted to a Rule 56 motion for summary judgment pursuant to Fed.R.Civ.P. 12(b), and is granted for the following reasons.

### FACTS

The parties do not dispute any of the facts alleged in the complaint. Defendant City operates the Staten Island Ferry, a fleet of ferry boats, to transport passengers between the boroughs of Staten Island and Manhattan. In Staten Island, the ferries dock at the St. George Terminal. Plaintiff Peter O'Brien ("O'Brien") was employed by the City to perform various duties as a supervisor at that terminal. On February 8, 1984, O'Brien went aboard a ferry that was docked to break up a fight between a male passenger and a female passenger. In order to protect the female passenger, he took her to his office in the terminal building. A few minutes later, the male passenger sought to enter the office, but O'Brien barred his way. The male passenger then struck O'Brien, causing him to trip over a ledge and hit a brick wall near the office entrance. O'Brien injured his neck and ankle in that fall.

On May 6, 1985, O'Brien and his wife, Nancy O'Brien, commenced a personal injury action in state court to recover damages under the Jones Act, 46 U.S.C.App. § 688.[1] Exh. A to Def.'s Notice of Mot. Before the case was tried to a jury, the parties consented to have the court conduct an evidentiary hearing to determine whether O'Brien was a seaman for purposes of the Jones Act. At the conclusion of the hearing, the court found that O'Brien was not a Jones Act seaman and dismissed the action. Exhs. B and C to *id.* The Appellate Division, Second Department, affirmed the lower court decision on April 20, 1992, Exh. D to *id.*, and both the Second

Department and the Court of Appeals denied leave to appeal on July 1, 1992, and December 22, 1992, respectively. Exh. E to *id.*

Approximately one month later, on January 26, 1993, plaintiffs commenced this action in federal court under the LHWCA, 33 U.S.C. § 905(b). The complaint filed in this action is nearly identical to the original state court complaint. Defendant City moves for summary judgment of dismissal. For the following reasons, that motion is granted.

### DISCUSSION

Federal Rule Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To attempt to review the voluminous treatise, law review and judicial literature on summary judgment would be as foolhardy as it would be superfluous. Suffice it to be cognizant of the observation made by the Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986):

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct.

---

1. That section of the Jones Act provides relief to "seamen" who sustain injuries during their employment, but "under the Jones Act or general maritime law, seamen do not include land-based workers." *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 447, 111 S.Ct. 807, 814, 112 L.Ed.2d 866 (1991). In contrast, the LHWCA provides the exclusive remedy for land-based workers such as longshoremen and stevedores who unload or shift a ship's cargo, 33 U.S.C. § 905(a), and the remedies afforded by the Jones Act and the LHWCA are mutually exclusive. *Southwest Marine, Inc. v. Gizoni,* —— U.S. ——, ——, 112 S.Ct. 486, 492, 116 L.Ed.2d 405 (1991) (quoting *Wilander,* 498 U.S. at 446, 111 S.Ct. at 813).

1348, 1355–56, 89 L.Ed.2d 538 (1986), the Court said:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

. In Steven A. Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183 (1987), the author, commenting upon that statement in *Matsushita,* writes:

> This language makes clear that summary judgment acts in a parallel fashion to the *trial* motion for directed verdict, allowing a grant if the nonmovant plaintiff fails on substantive proof even before trial. This strengthens the perception that summary judgment allows weak *factual* claims to be weeded out, not just facts that have no legal import: "genuine" allows some quantitative determination of sufficiency of the evidence.

*Id.* at 186.

·And finally, in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court again emphasized that granting a motion for summary judgment requires that there be no *genuine* issue of material fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment.... [S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court went on to instruct that "[i]f the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11.

Applying these legal principles, it is clear that summary judgment for defendant City is appropriate because the prior state court determination precludes plaintiffs from bringing this action.

Plaintiffs commenced this action against O'Brien's employer, defendant City under 33 U.S.C. § 905(b). That section provides in relevant part:

> In the event of injury to a person covered [by the LHWCA] caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of [33 U.S.C.] section 933....

33 U.S.C. § 905(b).

■ In 1983 the Supreme Court held that the exclusivity provision of the LHWCA which precludes a covered maritime employee from bringing a personal injury suit against his employer, 33 U.S.C. § 905(a), does not bar an employee from maintaining a negligence action under § 905(b) against his employer if the employer owns the vessel that caused his injury. In that case, the employer is being sued in the capacity of vessel owner, rather than employer. *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 531–32, 103 S.Ct. 2541, 2547–48, 76 L.Ed.2d 768 (1983).[2] This action, however, must be dismissed on the grounds of claim preclusion.

■ It is well settled that a federal court must accord the same preclusive effect

---

2. Section 905(b) was amended in 1984 to bar "dual capacity" actions brought by maritime employees engaged in "shipbuilding, repairing, or breaking services" for injuries occurring after September 28, 1984, *see* P.L. 98–426, § 28(c), 98 Stat. 1639, 1655 (Sept. 28, 1984). *See, e.g., Eagle–Picher Indus., Inc. v. United States,* 937 F.2d 625, 628 (D.C.Cir.1991) (citing 33 U.S.C. § 905(b) as amended by P.L. 98–426, § 5(a)(1), 98 Stat. at 1641); *Gay v. Barge 266,* 915 F.2d

1007, 1010 (5th Cir.1990). Analogous regulations define ship-breaking as "any breaking down of a vessel's structure for the purpose of scrapping the vessel, including the removal of gear, equipment, or any component part of a vessel. 29 C.F.R. §§ 1910.15(b)(1), 1915.4(1). Since O'Brien neither builds, repairs, nor breaks vessels, he is not precluded from bringing this action.

to a state court judgment as that judgment would receive under state law in a subsequent proceeding. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (citing 28 U.S.C. § 1738). Under New York law, the doctrine of res judicata or claim preclusion estops a party from relitigating a claim or cause of action decided in an earlier action or which the party could have raised, but was not actually litigated, in the earlier proceeding, *Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929) (Cardozo, J.), because "once a judgment has been rendered by a court of competent jurisdiction, it will be treated thereafter as the full measure of relief between the same parties on the same cause of action." *Bottini v. Sadore Management Corp.*, 764 F.2d 116, 119 (2d Cir.1985) (citing *Reilly v. Reid*, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 648, 379 N.E.2d 172, 175 (1978)).

In contrast, the doctrine of collateral estoppel or issue preclusion:

bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992) (citing cases); *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 304, 344 N.Y.S.2d 938, 941, 298 N.E.2d 105, 107 (1973) (quoting *Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)).

In this case, plaintiffs first litigated their personal injury action in state court, claiming that O'Brien was entitled to recover damages under the Jones Act, 46 U.S.C.App. § 688, because he was a "seaman." However, notwithstanding that claims under the Jones Act and the LHWCA are mutually exclusive, *Southwest Marine, Inc. v. Gizoni*, — U.S. —, —, 112 S.Ct. 486, 492, 116 L.Ed.2d 405 (1991) (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 452, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991)), plaintiffs could have included a negligence claim under the LHWCA, 33 U.S.C. § 905(b), as an alternative ground for relief in the prior state court action. *See, e.g., Ducote v. V. Keeler & Co.*, 953 F.2d 1000, 1001–02 (5th Cir.1992) (injured crane operator brought suit under the Jones Act and, alternatively, under the LHWCA); *Bach v. Trident S.S. Co.*, 920 F.2d 322, 324 (5th Cir.1991) (plaintiffs, survivors of river pilot who suffered heart attack while aboard a vessel, brought suit under the Jones Act and the LHWCA), *vacated in light of intervening Supreme Court opinion*, — U.S. —, 111 S.Ct. 2253, 114 L.Ed.2d 706 (1991), *aff'd on remand*, 947 F.2d 1290 (5th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992); *Ducrepont v. Baton Rouge Marine Enters., Inc.*, 877 F.2d 393, 394 (5th Cir.) (plaintiff asserted Jones Act and LHWCA claims in the alternative), *reh'g denied*, 885 F.2d 870 (5th Cir. 1989); *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789 (2d Cir.1979) (plaintiff commenced action invoking lower court's jurisdiction under the Jones Act, the LHWCA and general admiralty jurisdiction); *cf. Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 2 (5th Cir.1992) (plaintiffs amend complaint to add LHWCA negligence claim after court dismissed Jones Act claim), *cert. denied*, — U.S. —, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). New York law is not to the contrary. *See, e.g., In re Midland Ins. Co.*, 147 Misc.2d 78, 80, 553 N.Y.S.2d 964, 966 (Supm.Ct. New York Co.1990) (plaintiff John Buividas brought action, *inter alia*, under Jones Act and LHWCA), *aff'd*, 170 A.D.2d 272, 565 N.Y.S.2d 1011 (1st Dep't), *appeal denied*, 78 N.Y.2d 855, 573 N.Y.S.2d 645, 578 N.E.2d 443 (1991). Thus, as it is clear that plaintiffs would be precluded from litigating their LHWCA claim in a subsequent state court action because they could have raised that claim in the earlier state court action as an alternative ground for relief, summary judgment of dismissal is appropriate in light of *Migra, supra.*

In addition, plaintiff's negligence claim under the LHWCA is time barred either under the equitable doctrine of laches or the general three-year statute of limitations applicable to maritime tort claims, 46 U.S.C.App. § 763a. The doctrine of laches "is not like [a

statute of] limitation, a mere matter of time; but is principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *DeSilvio v. Prudential Lines, Inc.*, 701 F.2d 13, 15 (2d Cir.1983) (quoting *Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892)). Thus, the district court must exercise its discretion in determining "whether there existed [a] satisfactory excuse for [plaintiffs'] delay in bringing the cause of action and whether allowing the action to go forward despite the delay would unfairly prejudice the defendant," and the court should consider the analogous statute of limitations. *DeSilvio*, 701 F.2d at 15 (quoting *Public Adm'r of New York County v. Angela.Compania Naviera*, 592 F.2d 58, 63–64 (2d Cir.), *cert. denied*, 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979)).

■ Where the action is commenced after the expiration of the analogous limitations period, the court must ask the plaintiff "why the case should be allowed to proceed." *DeSilvio*, 701 F.2d at 16. *See also Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 884–85 (5th Cir.1979) (plaintiff bears burden of showing excusable delay and lack of prejudice to defendant when action is commenced after expiration of analogous limitations period). In this case, the three-year limitation period of § 763a is, at least, an analogous statute of limitation.

Section 763a provides:

Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

46 U.S.C.App. § 763a.

Section 763a was enacted on October 6, 1980, and courts are divided on whether it is to be applied retroactively. *See Cooper v. Diamond M Co.*, 799 F.2d 176, 178 (5th Cir.1986) (discussing retroactivity of section 763a with respect to unseaworthiness admiralty action), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987). The more pertinent issue in this case is whether that section applies prospectively to LHWCA

claims under § 905(b). At least one court has recently applied § 763a to a § 905(b) claim. *Logwood v. Appollo Marine Specialists, Inc.*, 772 F.Supp. 925, 926 & n. 1 (E.D.La.1991) (Sear, J.). However, other courts have continued to apply the equitable doctrine of laches in assessing the timeliness or untimeliness of an admiralty action even post-enactment of § 763a. *Cooper v. Texaco, Inc.*, 1992 WL 41717, at *1 (E.D.La.1992) (Heebe, J.) (applying § 763a to Jones Act claim and laches rule to § 905(b) claim). *Cf. DeSilvio*, 701 F.2d at 14, 15 n. * (holding that laches doctrine does not bar personal injury claim of longshoreman, who fell in November 1974 while working on a ship, and apparently commenced the action, *inter alia*, under § 905(b)); *Bush v. Oceans Int'l*, 621 F.2d 207, 211 (5th Cir.1980), *upon remand, Bush v. Sumitomo Bank and Trust Co.*, 513 F.Supp. 1051, 1053 (E.D.Tex.1981) (applying laches doctrine before enactment of § 763a).

■ In this case, whether the timeliness of plaintiffs' § 905(b) action is measured by the three-year limitations period of § 763a or under the doctrine of laches, it is clearly barred. O'Brien's injury occurred on February 8, 1984, and this action was commenced nine years later on January 26, 1993, long after the three year statute of limitations period of § 763a had expired. Furthermore, while under the doctrine of laches the three-year limitations period is only a factor to be considered, plaintiffs have not demonstrated a justifiable excuse for the inordinate delay in commencing this action, nor have they shown lack of prejudice to the defendant. Plaintiffs waited until they had exhausted the state appellate process—when the New York Court of Appeals denied leave to appeal on December 22, 1992—before commencing this action on January 26, 1993. Yet, if they believed that this § 905(b) action was not within the scope of the prior state court action, they offer no excuse for their failure to commence this action sooner. While the fact that the evidence may be stale after nine years does not mandate a finding of prejudice to defendant City because it was placed on notice of the claim through the state court action, *see DeSilvio*, 701 F.2d at 17 (filing of state court summons placed defendant on

notice of potential claim), the City would certainly be prejudiced were it required to litigate this LHWCA action after it has already defended the Jones Act action in state court and on appeal. Accordingly, plaintiffs' claim is barred by the doctrine of laches.

Plaintiffs contend that the time in which they could commence this action was tolled during the pendency of the earlier Jones Act action in state court. However, this argument must be rejected because both the federal and state statutory tolling provisions upon which plaintiffs rely are inapposite. Plaintiffs point to section 913(d) of Title 33 of the United States Code which tolls the time period in which an injured maritime worker or his survivors may file a claim for compensatory benefits under the LHWCA, *see* 33 U.S.C. §§ 908, 909, 913(d). Pls.' Memo. of Law in Opp'n at 16; Letter of Paul S. Edelman to the Court, dated May 21, 1993 at 1. However, the tolling provision of § 913(d) does not apply to plaintiffs' § 905(b) negligence claim: it only tolls the time for filing claims for "compensation," which is defined as "the money allowance paid to an employee or to his dependents" under the LHWCA. *See* 33 U.S.C. § 902(12).

Plaintiffs' reliance on section 205 of the New York Civil Practice Law and Rules is likewise unavailing. That section allows a plaintiff to commence another action within six months of the termination of a prior lawsuit provided the prior lawsuit was not terminated via "a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or *a final judgment upon the merits* ...." N.Y.Civ. Prac.L & R. § 205 (McKinney Supp.1993) (emphasis supplied). Here, the parties consented to present their evidence to the judge for the limited purpose of determining whether O'Brien was a seaman under the Jones Act before the case would be tried to the jury. Plaintiffs conceded that if the court held that O'Brien was not a "seaman" for purposes of the Jones Act, then the action must be dismissed. At the conclusion of the parties' presentation of the evidence, the state court made findings of fact and conclusions of law; it held that O'Brien was not a

Jones Act "seaman" and subsequently entered a final judgment of dismissal. *See* Exhs. B and C to Def.'s Notice of Mot. It is clear that the state court's determination was a final judgment on the merits. *See* N.Y.Civ. Prac.L. & R. § 5013 (McKinney 1992) (judgment of dismissal after the plaintiff has presented its evidence is a judgment on the merits). Accordingly, plaintiffs' negligence claim under the LHWCA is time barred.

■ In addition, not intending to diminish in any way the foregoing bases upon which this motion is decided, the Court would be driven to conclude that summary judgment should be granted defendant on yet another ground. The plaintiffs' claim is bottomed upon negligence, alleged in paragraph 9 of their complaint to be as follows:

> Defendant [City], its agents, servants and/or employees were reckless, careless, negligent in ownership, operation, management, maintenance, supervision and control of its ferry, its ferry terminal and dock in failing to provide Plaintiff, PETER O'BRIEN, with a safe place to work; failing to have working equipment and, especially, communication equipment; failing to utilize pre-existing knowledge of the dangerous conditions existing thereat; exposing Plaintiff to unreasonable risk of harm and injury; failing to provide proper crew, both in quality and quantity; failing to provide adequate and appropriate security; failing to provide proper safeguards and personnel; and Defendant was otherwise negligent.

The inapplicability of any of these allegations to the undisputed facts is readily apparent. Consequently, although "summary judgment is rarely appropriate in actions based upon negligence," 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure*, § 2729, at 194 (2d ed. 1983), this is that rare case because it is clear that O'Brien cannot trace his injury to any alleged acts of negligence involving the City's ferry.

Plainly, his injuries were not caused by any negligence in the ownership, operation, management, maintenance, supervision and control of the ferry, ferry terminal or dock. His injuries were also *not* caused by being

provided with an unsafe place to work; by the City's failure to provide working or communications equipment; by the City's failure to utilize pre-existing knowledge of a dangerous condition; by the City's exposing him to an unreasonable risk of harm; by the City's failure to provide proper crew or adequate security or proper safeguards and personnel (whatever that may mean). Rather, this is a classic case of an unavoidable accident, which is defined as "an occurrence which was not intended and which, under all the circumstances, could not have been foreseen or prevented by the exercise of reasonable precautions. That is, an accident is considered unavoidable or inevitable at law if it was not proximately caused by the negligence of any party to the action, or to the accident." W. Page Keeton et al., *Prosser and Keeton on Torts* § 29, at 162 (5th ed. 1984). Imposing liability upon the City of New York on these facts would be to make the City an insurer and to abandon the time-honored requirement that liability in such cases be based upon fault.

■ Furthermore, this Court would hold that the City of New York is immunized from suit under the LHWCA by virtue of 33 U.S.C. § 903(b). That section provides that "*[n]o compensation shall be payable in respect to a disability or death of an officer or employee* of the United States, or any agency thereof, or *of any State or foreign government, or any subdivision thereof.*" 33 U.S.C. § 903(b) (emphasis added). Thus, the City, as a subdivision of the State of New York, *see, e.g., Caruso v. State,* 591 N.Y.S.2d 614, 616 (3d Dep't 1992); *Town of Black Brook v. State,* 41 N.Y.2d 486, 488, 393 N.Y.S.2d 946, 948, 362 N.E.2d 579, 580 (1977), is excluded from the scope of the LHWCA and is, therefore, immune from a § 905(b) negligence lawsuit.[3] *Cf. Leuallen v. Euclid Shipping Co.,* 1986 WL 15022 (E.D.Pa.1986) (plaintiff cannot maintain

LHWCA compensation claim against municipal agency which is a subdivision of the City of Salem, which is a subdivision of the State of New Jersey).

Plaintiffs contend, however, that even if the City is a subdivision of the State, it is only protected against LHWCA compensation claims as defined in § 902(12), but is subject to a § 905(b) claim based on its alleged negligence with respect to a vessel that it owns. Pls.' Memo. of Law in Opp'n at 10–11. In effect, plaintiffs ask this Court to interpret the exclusion embodied in § 903(b) narrowly.[4] However, this Court concurs with those courts that have held that § 903(b), read in tandem with § 905(b), bars negligence claims against entities that have been excluded from the scope of the LHWCA. *See, e.g., Eagle–Picher Indus., Inc. v. United States,* 937 F.2d 625, 630 (D.C.Cir.1991) (interpreting broad exclusion in § 903(b) to preclude negligence action under § 905(b) against the federal government); *Eagle–Picher Indus., Inc. v. United States,* 846 F.2d 888, 893–95 (3d Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988) (same); *but see Bush v. Eagle–Picher Indus., Inc.,* 927 F.2d 445, 450 n. 8 (9th Cir.1991) (the scope of section 905(b), which carves out an exception to the exclusivity of the LHWCA for negligence claims brought under federal common law, is not limited by § 903(b)). Accordingly, the City would be immune from suit under the LHWCA in any event.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.

SO ORDERED.

---

3. Plaintiffs' argument that the City is not a subdivision of the state because it is statutorily authorized to exercise home rule powers of governance under N.Y. Const. art. 9 and N.Y.Mun. Home Rule § 1 *et seq.* (McKinney 1969 and Supp.1993), is meritless. *See Black Brook,* 41 N.Y.2d at 488–89, 393 N.Y.S.2d at 948, 362 N.E.2d at 580–81 (local units of government with home rule powers do not lose their status as political subdivisions of the state).

4. This Court notes that plaintiffs' counsel has repeatedly urged this Court to interpret the term "compensation" broadly so as to apply the tolling provision of 33 U.S.C. § 913(d) to plaintiffs' § 905(b) claim despite the fact that § 913(d) specifically addresses LHWCA compensation claims. Pls.' Memo. of Law in Opp'n at 16; Letter of Paul S. Edelman to the Court, dated May 21, 1993 at 1.